UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VIERGINIA ARTUBEL,

      Plaintiff,

v.                             CASE NO: 8:08-cv-179-T-23MAP

COLONIAL BANK GROUP, INC., et al.,

      Defendants.

_____/

## <u>ORDER</u>

    This is an action by Vierginia Artubel (the "plaintiff") against the City of Tampa,

Tampa Police Department, Stephen Hogue (in his official capacity), and John Doe 1

(collectively, the "Tampa defendants"); the City of Punta Gorda, Punta Gorda Police

Department, Charles Rinehart (in his official capacity), Howard Kunik (in his official

capacity), and Detectives Thomas Lewis and Harvey Ayers (collectively, the "Punta

Gorda defendants"); Colonial Bank Group, Inc. ("Colonial"[1]), Rose Ramsey, and Vickie

Patterson (collectively, the "bank defendants"); and Wal-Mart, Inc. ("Wal-Mart").[2] Count

one of the amended complaint (the "complaint") asserts a claim under 42 U.S.C. § 1983

against the City of Tampa, Tampa Police Department, Officer Doe, the City of Punta

Gorda, Punta Gorda Police Department, and Detectives Lewis and Ayers for unlawful

search and seizure.  Count two asserts a claim under Section 1983 against the City of

---

[1] Colonial states (Doc. 47 at 1) that the complaint incorrectly identifies Colonial as "Colonial Bank Group, Inc.," instead of Colonial Bank, N.A.

[2] The complaint also mentions among the parties a "police officer Woodward" (Doc. 53 ¶ 15) or "Wooward" (Doc. 53 ¶ 13), who is described as an officer of the Punta Gorda Police Department but not otherwise mentioned.  Woodward is omitted from the caption and no summons was issued for a defendant named Woodward.  In short, Woodward is not a party.

Tampa, Tampa Police Department, and Officer Doe for excessive force.  Count three

asserts a conspiracy claim under 42 U.S.C. § 1985(3) against the City of Punta Gorda,

Punta Gorda Police Department, Detectives Lewis and Ayers, and the bank defendants.

Count four asserts a state-law claim for false arrest against the City of Tampa, Tampa

Police Department, Officer Doe, the City of Punta Gorda, Punta Gorda Police

Department, and Detectives Lewis and Ayers.  Count five asserts a state-law claim for

intentional infliction of emotional distress against all the defendants.  Count six asserts a

state-law claim for false imprisonment against the City of Tampa, Tampa Police

Department, Officer Doe, the City of Punta Gorda, Punta Gorda Police Department, and

Detectives Lewis and Ayers.  Counts seven and eight assert claims for malicious

prosecution and abuse of process against the bank defendants, the City of Punta

Gorda, Punta Gorda Police Department, and Detectives Lewis and Ayers.  Colonial,

Patterson, the Tampa defendants, and Wal-Mart move (Docs. 38, 47, 54) to dismiss the

claims against them pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, and

the plaintiff responds (Docs. 29, 52, 56) in opposition.

## BACKGROUND

The complaint includes the following allegations, which are presumed true for the

purpose of this motion.  On April 3, 2007, while "lawfully operating her motor vehicle"

(Doc. 53 ¶ 20). the plaintiff was stopped by an officer of the Tampa Police Department

(John Doe 1).  Officer Doe asked to see the plaintiff's drivers license.  After the plaintiff

complied and after more than thirty minutes, Officer Doe returned to the plaintiff's car

and informed her that there was an outstanding Charlotte County, City of Punta Gorda

warrant for her arrest and that she was under arrest.  Officer Doe tightly handcuffed the

plaintiff and arrested her (Doc. 53 ¶ 22) "despite [Officer Doe's] knowledge that he

lacked probable cause to do so."  The plaintiff spent approximately ten hours in the

Tampa city jail until a friend posted bail.  On April 22, 2007, "as a result of the Plaintiff's

arrest, plaintiff was suspended without pay" (Doc. 53 ¶ 26) from her job as a Wal-Mart

sales associate.

On April 24, 2007, the plaintiff "went to the police department of Punta Gorda . . .

to inquire about the warrant." (Doc. 53 ¶ 27).[3]  The plaintiff discovered that Rose

Ramsey, a manager of Colonial's Punta Gorda branch bank, and Vickie Patterson, a

teller at the same branch, had filed a police report (Doc. 53 ¶ 29) in December, 2006,

"falsely accusing the plaintiff of attempting to negotiate at [Colonial Bank] a fraudulent

check in the amount of $998.56" and thereafter (Doc. 53 ¶ 57; cf. ¶¶ 44, 58) "swore to a

criminal complaint" including the same allegation.  Additionally, the plaintiff discovered

(Doc. 53 ¶¶ 28, 45) that the warrant under which she was arrested was supported by an

affidavit of Detective Ayers of the Punta Gorda Police Department in which Ayers

"falsely claimed to have known plaintiff from many contacts while working as a deputy

with the Desoto County Sheriff's office" and to have "had dealing with the plaintiff in

regard to other criminal acts supposedly committed by the plaintiff."

Colonial demanded the plaintiff's criminal prosecution even though the plaintiff

informed Colonial (Doc. 53 ¶ 30) that the plaintiff had not visited Punta Gorda before

April 24, 2007, and therefore could not have committed the crime alleged.  Colonial

---

[3] Cf. Doc. 52 at 2 ("On April 24, 2006 [2007?], the plaintiff was arrested by officers of the Punta Gorda Police Department pursuant to a criminal complaint filed by the Colonial Bank Group."); Doc. 1 ¶ 28 ("Upon arrival at Punta Gorda Police Department, the plaintiff was arrested . . . .").

(Doc. 53 ¶ 32) "initiated criminal proceedings against plaintiff . . . despite [Colonial's] knowledge that it lacked probable cause to do so."

The plaintiff also informed Detective Lewis of the Punta Gorda Police Department (Doc. 53 ¶ 30) that the plaintiff had not visited Punta Gorda before April 24, 2007, and the plaintiff volunteered (Doc. 53 ¶ 31) to show "defendants" (presumably, the Punta Gorda defendants and the bank defendants) that the plaintiff had not visited Punta Gorda her Wal-Mart employment records to establish her alibi.  However, "both defendants disregarded the plaintiff's plea and failed to investigate."  The plaintiff was required to appear in court to defend herself in the criminal proceeding.  On December 12, 2007 (Doc. 53 ¶ 34), "all charges . . . were terminated in her favor."  On the following day (Doc. 53 ¶ 36), the plaintiff was discharged from her job as a result of the arrest and criminal charges.

## DISCUSSION

A motion under Rule 12(b)(6), Federal Rules of Civil Procedure, challenges the legal sufficiency of the complaint.  On a Rule 12(b)(6) motion,[4] the complaint's factual allegations are accepted as true and construed most favorably to the plaintiff.  Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002).  "However, a court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for her."  Peterson v. Atlanta Hous. Auth., 998 F.2d 904, 912 (11th Cir. 1993).  Generally, the Federal Rules of Civil Procedure include no requirement that the plaintiff detail the facts upon which

---

[4]  Contrary to the plaintiff's contention (Doc. 52 at 10), Rule 12(b)(6), Federal Rules of Civil Procedure, not Rule 1.140, Florida Rules of Civil Procedure, provides the pertinent standard.

the plaintiff bases a claim.  Instead, Rule 8(a)(2) requires a short and plain statement of the claim that fairly notifies the defendant of both the claim and the supporting grounds. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007).  However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Twombly, 127 S. Ct. at 1965 n.3.  The plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65 (citation omitted).  "Factual allegations must be enough to raise [the plaintiff's] right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true." Twombly, 127 S. Ct. at 1965 (citations omitted).  In short, the complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974.  Further, "while notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007).  Finally, a complaint should be dismissed under Rule 12(b)(6) "when the allegations in the complaint, on their face, show that an affirmative defense bars recovery on the claim." Powell v. Barrett, 496 F.3d 1288, 1304 (11th Cir. 2007).

I.  The Tampa Defendants

Section 1983 Claims Against John Doe 1

Count one asserts a claim under Section 1983 against the City of Tampa, Tampa Police Department, Officer John Doe 1, the City of Punta Gorda, Punta Gorda Police Department, and Detectives Lewis and Ayers.  Section 1983 provides a remedy for the deprivation of rights secured by the Constitution and laws of the United States by persons acting under color of state law.  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  Wyatt v. Cole, 504 U.S. 158, 161 (1992).  A claim under Section 1983 requires proof that (1) the defendants deprived the plaintiff of a right secured by the Constitution or laws of the United States and (2) the deprivation was committed under color of state law.  See Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).  Because "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred," Albright v. Oliver, 510 U.S. 266, 271 (1994) (citation and internal quotation marks omitted), "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed," Albright, 510 U.S. at 271.  Liberally construed, count one alleges that Officer John Doe 1 deprived the plaintiff of the right secured by the Fourth Amendment (as applied to the States through the Fourteenth Amendment) to be free from unreasonable search and seizure.  However, the Tampa defendants argue that probable cause supports the plaintiff's arrest and, alternatively, Officer Doe enjoys qualified immunity.

On a motion to dismiss, "the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined."  GJR Invs., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1366 (11th Cir. 1998).  A Section 1983 claims against a person arguably entitled to qualified immunity (e.g., a government official sued in his individual capacity) confronts a heightened pleading requirement.  GJR Invs., 132 F.3d at 1367.  To protect public officials from the burdens of protracted litigation and dispose of non-meritorious claims, the Eleventh Circuit has "tightened the application of Rule 8 with respect to § 1983" and requires a Section 1983 plaintiff to allege "with some specificity" the facts supporting a claim against a public official arguably entitled to qualified immunity.  GJR Invs., 132 F.3d at 1367.[5]  The complaint must include "specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity."  Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003) (quoting Venney v. Hogan, 70 F.3d 917, 922 (6th Cir. 1995), abrogation recognized by Goad v. Mitchell, 297 F.3d 497, 503 (6th Cir. 2002)).  This

---

[5] Following Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993), Crawford-El v. Britton, 523 U.S. 574 (1998), and Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), the majority of the United States Courts of Appeals reject a heightened pleading requirement for a Section 1983 claim against an individual defendant arguably entitled to qualified immunity.  See Gene Martin Auto Sales, Inc. v. Davis, No. 2:07CV937-MEF, 2008 WL 1990003, 3 (M.D. Ala. May 5, 2008) ("The First, Second, Third, Sixth, Seventh, Eighth, Ninth, Tenth, and D.C. Circuits have rejected heightened pleading in the wake of Leatherman, Swierkiewicz and Crawford-El . . . ."); see also Erickson v. Pardus, 127 S. Ct. 2197 (2007) (applying the pleading standard in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) to a Section 1983 claim against an individual defendant).  But see Epps v. Watson, 492 F.3d 1240, 1242 (11th Cir. 2007); Swann v. So. Health Partners, Inc., 388 F.3d 834, 837 (11th Cir. 2004); Passmore Swann v. S. Health Partners, Inc., 388 F.3d 834 (11th Cir. 2004); Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003); Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003); Lawson v. Curry, 244 Fed. Appx. 986, 988 (11th Cir. 2007) (unpublished); Maldonado v. Snead, 168 Fed. Appx. 373, 379 (11th Cir. 2006) (unpublished); Weissman v. Nat'l Ass'n of Sec. Dealers, Inc., 500 F.3d 1293, 1309 (11th Cir. 2007) (Tjoflat, J., dissenting) ("The use of the so-called 'heightened pleading' requirement, though longstanding, continues to give rise to debate.  Our cases on this topic are perhaps not the model of clarity, but at the very least, this circuit applies a heightened pleading standard in complaints alleging § 1983 claims against entities who may raise qualified immunity as a defense (e.g., government officials sued in their individual capacities.").

heightened pleading requirement has no application to the City of Tampa, Tampa Police Department, City of Punta Gorda, Punta Gorda Police Department, or the bank defendants.[6]

Qualified immunity protects a government official performing discretionary functions if the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Beshers v. Harrison, 495 F.3d 1260, 1265 (11th Cir. 2007) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).  Moreover, "[b]ecause qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation, questions of qualified immunity must be resolved 'at the earliest possible stage in litigation.'" Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003) (citations omitted).  "It is therefore appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage if the complaint 'fails to allege the violation of a clearly established constitutional right.'" Gonzalez, 325 F.3d at 1233.[7]

A two-part analysis determines whether a public official violated a clearly established constitutional right.  An initial inquiry determines whether the plaintiff's allegations, if true, establish a specific constitutional violation. Saucier v. Katz, 533 U.S.

---

[6]  See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993) (holding that a court may not apply a pleading standard more stringent than that imposed by Rule 8 to a Section 1983 claim asserting municipal liability); Swann v. So. Health Partners, Inc., 388 F.3d 834, 835 (11th Cir. 2004) (applying Leatherman to hold that no heightened pleading standard governs a Section 1983 claim against a non-governmental entity not entitled to qualified immunity).

[7]  "A public official who asserts a defense of qualified immunity must establish that he was engaged in a discretionary function when he performed the acts of which the plaintiff complains." Epps v. Watson, 492 F.3d at 1243 (citation and internal quotation marks omitted).  However, the complaint alleges and no party disputes that Officer Doe was acting within his discretionary authority as a police officer with the Tampa Police Department when he stopped and arrested the plaintiff. See Doc. 53 ¶ 19.

194, 201 (2001).  "If no constitutional right would have been violated were the

allegations established, there is no necessity for further inquiries concerning qualified

immunity."  Saucier, 533 U.S. at 201.  However, if the complaint alleges a constitutional

violation, the inquiry turns to whether that right was clearly established by then-existing

legal precedent.  Saucier, 533 U.S. at 201.  "Clearly established" for purposes of

qualified immunity means that "[t]he contours of the right must be sufficiently clear that a

reasonable official would understand that what he is doing violates that right."  Anderson

v. Creighton, 483 U.S. 635, 640 (1987).

(a) Unlawful Traffic Stop

Generally, a police officer's decision to stop an automobile is reasonable and

therefore comports with the Fourth Amendment if justified by reasonable suspicion

under Terry v. Ohio, 392 U.S. 1 (1968) or by probable cause.  United States v.

Chanthasouxat, 342 F.3d 1271, 1275 (11th Cir. 2003).[8]

Probable cause exists if "'the facts and circumstances within the officer's

knowledge, of which he or she has reasonably trustworthy information, would cause a

prudent person to believe, under the circumstances shown, that the suspect has

committed, is committing, or is about to commit an offense.'"  Rankin v. Evans, 133 F.3d

1425, 1435 (11th Cir. 1998) (quoting Williamson v. Mills, 65 F.3d 155, 158 (11th Cir.

1995).[9]  The existence of probable cause is determined objectively, "without regard to

---

[8]  See also Illinois v. Wardlow, 528 U.S. 119, 123 ("[A]n officer may, consistent with the Fourth
Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion
that criminal activity is afoot.") (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)).

[9]  See also Whren v. United States, 517 U.S. 806, 810 (1996) ("As a general matter, the decision
to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation
has occurred."); United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir. 1998) ("[L]aw enforcement may
(continued...)

the law enforcement officers' subjective beliefs." <u>Craig v. Singletary</u>, 127 F.3d 1030, 1042 (11th Cir. 1997).  Reasonable suspicion exists if an officer conducting a stop has "a reasonable, articulable suspicion based on objective facts that [the motorist] has engaged in, or is about to engage in, criminal activity." <u>United States v. Lindsey</u>, 482 F.3d 1285, 1290 (11th Cir. 2007).  Although less demanding standard than probable cause, reasonable suspicion requires "at least a minimal level of objective justification for making the stop." <u>Lindsey</u>, 482 F.3d at 1290.  Reasonable suspicion "may be formed by observing exclusively legal activity, even if such activity is seemingly innocuous to the ordinary citizen." <u>Lindsey</u>, 482 F.3d at 1290.  Finally, Officer Doe enjoys qualified immunity if the traffic stop was supported by "arguable" probable cause or "arguable" reasonable suspicion–that is, if a reasonable police officer in the same circumstances and possessing the same information could have believed that probable cause or reasonable suspicion existed.[10]

Count one alleges generally (Doc. 53 ¶ 39) that the City of Tampa, Tampa Police Department, Officer Doe, the City of Punta Gorda, Punta Gorda Police Department, and Detectives Lewis and Ayers "violated Plaintiffs' [sic] civil and constitutional right by stopping and interfering with plaintiff's person or car without probable cause. . . ."

---

[9](...continued)
stop a vehicle when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operation of motor vehicles.").

[10]   <u>See</u> <u>Crosby v. Monroe County</u>, 394 F.3d 1328, 1332-33 (11th Cir. 2004) ("Qualified immunity applies when there was arguable probable cause for an arrest even if actual probable cause did not exist. . . . Arguable probable cause exists if, under all of the facts and circumstances, an officer reasonably could-not necessarily would-have believed that probable cause was present.") (citations omitted); <u>Jackson v. Sauls</u>, 206 F.3d 1156, 1165-66 (11th Cir. 2000) ("A law enforcement official who reasonably but mistakenly concludes that reasonable suspicion is present is still entitled to qualified immunity.  If an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop.").

Moreover, the complaint alleges elsewhere that the plaintiff was stopped while "lawfully operating her motor vehicle" and points to "the officer's failure to issue any moving violation summons" (Doc. 53 ¶ 24) as evidence that the stop was not a consequence of the plaintiff's violation of any traffic law.  Liberally construed, the complaint sufficiently alleges that Officer Doe stopped the plaintiff's car without probable cause or other justification (i.e., reasonable suspicion).  Although the complaint provides little detail,[11] the reasonableness of the stop depends on whether the facts observed by Officer Doe would arguably support reasonable suspicion or probable cause for the stop.  These facts (and generally, the information available to Officer Doe when he stopped the plaintiff's car) are known to Officer Doe but may not be known to the plaintiff, and the plaintiff cannot plead unknown facts.  Accordingly, the complaint adequately alleges that Officer Doe violated the plaintiff's clearly established Fourth Amendment rights, and whether Officer Doe enjoys qualified immunity on this claim cannot be resolved on this motion to dismiss.  See Marshall v. West, 507 F. Supp. 2d 1285, 1296-97 (M.D. Ala. 2007).

(b) False Arrest

An arrest without probable cause violates the Fourth Amendment.  Durruthy v. Pastor, 351 F.3d 1080, 1088 (2003).  To succeed on a Section 1983 claim for false arrest, a plaintiff must demonstrate the absence of probable cause.  Rankin, 133 F.3d at

---

[11] The plaintiff, an African-American (Doc. 53 ¶ 7), asserts (Doc. 56 at 4) that "the complaint . . . alleges that the traffic stop [was] in effect, for the 'offense' of 'driving while black.'"  In fact, the complaint includes no such allegation.  In any event, "the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment.  Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."  Whren v. United States, 517 U.S. 806, 813 (1996).

1436 .[12]  "An arresting officer is required to conduct a reasonable investigation to establish probable cause," <u>Rankin</u>, 133 F.3d at 1435, and the officer may not conduct a biased investigation, elect not to obtain easily discoverable facts, or ignore relevant information negating probable cause.  <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1229 (11th Cir. 2004).  However, "[t]o receive qualified immunity protection, an officer need not have actual probable cause but only 'arguable probable cause'."  <u>Wood v. Kesler</u>, 323 F.3d 872, 878 (11th Cir. 2003), <u>cert. denied</u>, 540 U.S. 879 (2003).  "Because only arguable probable cause is needed, the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed."  <u>Wood</u>, 323 F.3d at 878.

Count one alleges generally (Doc. 53 ¶ 39) that the City of Tampa, Tampa Police Department, Officer Doe, the City of Punta Gorda, Punta Gorda Police Department, and Detectives Lewis and Ayers "violated Plaintiffs' [sic] civil and constitutional right by . . . arresting" the plaintiff.  However, the complaint (a) alleges that Officer Doe arrested the plaintiff pursuant to an outstanding warrant for her arrest; (b) includes no allegation that the warrant was facially deficient, that Officer Doe was involved in any way in procuring the warrant (which was issued in another county), or that Officer Doe failed to inspect the warrant or otherwise conduct a reasonable investigation; and (c) admits that the warrant issued in connection with a criminal complaint filed with the Florida Attorney General's office charging the plaintiff with attempting to negotiate a fraudulent check.[13]

---

[12]  <u>See also</u> <u>Crowder v. Sinyard</u>, 884 F.2d 804, 825-26 (5th Cir. 1989). <u>But cf.</u> <u>Davis v. Rodriguez</u>, 364 F.3d 424, 434 (2d Cir. 2004) (noting circuit split).

[13]  The plaintiff's opposition neither attempts to rebut nor even mentions the Tampa defendants' contention the Punta Gorda arrest warrant establishes probable cause for arrest.

The complaint alleges vaguely (Doc. 53 ¶ 22) that Officer Doe arrested the plaintiff "despite [his] knowledge that he lacked probable cause to do so."  However, the complaint provides no hint of the factual basis for this legal conclusion and alleges no fact (apart from the ultimate dismissal of the criminal charges against the plaintiff, which is irrelevant[14]) inconsistent with probable cause in the circumstances.  Because police officers acting pursuant to a facially valid warrant generally are presumed to have probable cause to arrest, the vague allegation that Officer Doe knew he lacked probable cause when executing the warrant is insufficient.  In short, the complaint fails to allege facts sufficient to support a Section 1983 claim for a custodial arrest without probable cause.

Finally, count one is deficient for two additional reasons.  First, count one alleges that the City of Tampa, Tampa Police Department, Officer Doe, the City of Punta Gorda, Punta Gorda Police Department, and Detectives Lewis and Ayers all violated the plaintiff's rights through the conduct alleged in paragraph 39, and count one fails to distinguish among these defendants.  However, "geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of" in count one.  Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001).  This method of pleading forces the parties and the court to guess which defendant allegedly committed which act, and fails to comply with both Rule 10(b), Federal Rules of Civil Procedure, and an April 1, 2008, order (Doc. 20) directing the

---

[14]   See L.S.T., Inc. v. Crow, 49 F.3d 679, 685 (11th Cir. 1995) ("The fact that all charges against the plaintiffs were eventually dismissed for one reason or another is 'of no consequence' to [the] determination" whether probable cause existed at the time of an arrest.).

plaintiff to file an amended complaint that complies with Rule 10(b).  A second amended complaint shall comply with Rule 10(b).

Second, although the plaintiff contends in her legal memorandum and this order assumes that counts one and two seek recovery under Section 1983 for violations of rights secured by the Fourth Amendment (as applied to the States through the Fourteenth Amendment), neither count identifies the constitutional provision allegedly violated by the defendants.  Identifying the precise constitutional right allegedly violated is part of the plaintiff's prima facie case under Section 1983.  Bailey v. Town of Lady Lake, Fla., No. 5:05-cv-464, 2006 WL 2048250, *5 (M.D. Fla. July 20, 2006); see also Baker v. McCollan, 443 U.S. 137, 140 (1979).  Accordingly, a second amended complaint that includes a claim under Section 1983 shall identify the precise constitutional provision allegedly violated.

The plaintiff's jurisdictional statement (Doc. 53 ¶ 2) states, "This action is brought pursuant to the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution."  However, the remainder of the complaint alleges no violation and no facts allowing an inference of violation of the First, Fifth, or Eighth Amendments. The Fifth Amendment's due process clause applies only to the federal government, see Riley v. Camp, 130 F.3d 958, 972 n.19 (11th Cir. 1997), and the plaintiff alleges no federal participation in the pertinent events.  The Eighth Amendment's prohibition against cruel and unusual punishment only applies "subsequent to and as a consequence of a person's lawful conviction of a crime," see Hamm v. Dekalb Cty., 774 F.2d 1567, 1571 (11th Cir. 1985), and the plaintiff alleges that the criminal charges

terminated in her favor.  To the extent that the complaint purports to assert claims under the First, Fifth, and Eighth Amendments, the claims are due to be dismissed.[15]

(c) Excessive Force

Count two asserts an excessive force claim under Section 1983 against  the City of Tampa, Tampa Police Department, and Officer Doe.  Excessive force in an arrest violates the Fourth Amendment.  Davis v. Williams, 451 F.3d 759, 767 (11th Cir. 2006).  "To assert a Fourth Amendment claim based on the use of excessive force, the plaintiffs must allege (1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable."  Troupe v. Sarasota County, Fla., 419 F.3d 1160, 1166 (11th Cir. 2005).  "In an excessive force case arising out of an arrest, whether a constitutional violation occurred is governed by the Fourth Amendment's 'objective reasonableness' standard."  Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008).  "A genuine 'excessive force' claim relates to the manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest."  Hadley, 526 F.3d at 1329.  Determining whether the force used was objectively reasonable requires examination of such factors as "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically."  Hadley, 526 F.3d at 1329.  The need to apply force depends on such factors as the severity of the crime, immediate danger to the officer or others, and attempts to resist arrest or evade arrest by flight.  See Durruthy, 351 F.3d at 1094.

---

[15]  The complaint's jurisdictional statement also states that "[T]his action is brought pursuant to . . . Florida State Employment Laws, and Florida civil rights laws."  However, the complaint alleges no violation of a Florida statute.

However, "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989).[16]  Moreover, "the application of de minimis force, without more, will not support a claim for excessive force." Durruthy, 351 F.3d at 1094.  "Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal." Rodriguez v. Farrell (Rodriguez I), 280 F.3d 1341, 1352 (11th Cir. 2002).[17]  "[Q]ualified immunity applies unless application of the [reasonableness] standard would inevitably lead every reasonable officer . . . to conclude the force was unlawful." Slicker v. Jackson, 215 F.3d 1225, 1232 (11th Cir. 2000) (citation and internal quotation marks omitted).

Besides the conclusory allegation that Officer Doe used excessive force in arresting the plaintiff, the complaint alleges only (Doc. 53 ¶ 23) that as a result of being "handcuffed too tightly for an excessive period of time, the plaintiff sustained permanent injuries to [her] hands" and that (Doc. 53 ¶ 41) Officer Doe used force "in gaining control of the person of the Plaintiff and placing handcuffs on her [that] caused damages to plaintiff's risk [sic]."  Although sufficiently alleging more than de minimis injury, the complaint omits to specify the approximate length of the handcuffing or to allege facts (e.g., a denial of requests to loosen the handcuffs or even the plaintiff's lack of resistance) showing that the injuries were the result of force unreasonable in the circumstances.  In short, count two fails to allege sufficient detail to permit a

---

[16]   See also Durruthy v. Pastor, 351 F.3d 1080, 1094 (2003) ("[S]ome use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense.").

[17]   See also Rodriguez v. Farrell (Rodriguez I), 280 F.3d 1341, 1351 (11th Cir. 2002) ("[T]he typical arrest involves some force and injury.").

determination whether the facts alleged, if proved, will overcome the defense of qualified immunity[18] and therefore fails to comply with the applicable heightened pleading requirement.

<u>Official Capacity Claims Under Section 1983 Against Stephen Hogue</u>

The Tampa defendants argue that the plaintiff's Section 1983 claims against Stephen Hogue in his official capacity, if any,[19] should be dismissed as duplicative of the suit against the City of Tampa.  Suits against an individual in his official capacity under Section 1983 "generally represent only another way of pleading an action against an entity of which an officer is an agent."  <u>Monell v. New York City Dep't of Soc. Servs.</u>, 436 U.S. 658, 690, n.55 (1978).  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985).  Accordingly, in a suit against both a municipal entity and the entity's officer in his official capacity, the named individual defendant in his official capacity should be dismissed as redundant.  <u>Busby v. City of Orlando</u>, 931 F.2d 764, 776 (11th Cir. 1991).  Because the complaint names the defendant Stephen Hogue in his official capacity only, the Section 1983 claim against Hogue is redundant and properly dismissed with prejudice.  <u>See</u> <u>Edison v. Florida</u>, 2007 WL 80831, No. 2:04-cv-157, *2 (M.D. Fla. Jan. 8, 2007); <u>Bailey</u> 2006 WL 2048250 at *3.

---

[18]  <u>See, e.g.</u>, <u>Rodriguez I</u>, 280 F.3d 1352-53; <u>Rodriguez v. Farrell</u> (<u>Rodriguez II</u>), 294 F.3d 1276, 1278 (11th Cir. 2002); <u>Morreale v. City of Cripple Creek</u>, No. 96-1220, 1997 WL 290976, *1; <u>Schultz v. Hall</u>, 365 F. Supp. 2d 1218, 1226-31 (N.D. Fla. 2005).

[19]  The complaint includes Stephen Hogue (in his official capacity) in the caption and states that Hogue was the supervisor of John Doe 1.  Otherwise, the complaint is completely silent as to Hogue.

Section 1983 Claims Against the City of Tampa
and Tampa Police Department

The Tampa defendants argue for dismissal of the plaintiff's Section 1983 claims against the Tampa Police Department because the Tampa Police Department is not a proper party.  "[P]olice departments are not usually considered legal entities subject to suit."  Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992).  However, under Rule 17(b)(3), Federal Rules of Civil Procedure, an entity's capacity to be sued is determined by "the law of the state where the court is located."  See also Dean, 951 F.2d at 1214 (quoting former, substantively identical version of Fed. R. Civ. P. 17(b)).  Under Florida law, "where a police department is an integral part of the city government as the vehicle though which the city government fulfills its policing functions, it is not an entity subject to suit."  Fla. City Police Dep't v. Corcoran, 661 So. 2d 409, 410 (Fla. 3d DCA 1995).  Although probable, the Tampa Police Department's status as an integral part of the city government through which the City of Tampa fulfills its policing functions is not ascertainable from the face of the complaint.  See Ball v. City of Coral Gables, No. 1:07-cv-20949, slip. op. at 4-5 (S.D. Fla. Dec. 19, 2007); Hatten v. Davis, No. No. 2:03-cv-114, 2005 WL 3186183, *2 (M.D. Fla. Nov. 29, 2005).[20]

The Tampa Defendants next argue for dismissal of the plaintiff's Section 1983 claims against the City of Tampa because the plaintiff fails to allege that the City of Tampa deprived the plaintiff of a right protected by the Constitution or laws of the United

---

[20]  But see Everett v. Marianna Police Dep't, No. 5:07-cv-284, 2008 WL 222713, *2 (N.D. Fla. Jan. 25, 2008); Vaughn v. City of Orlando, No. 6:07-cv-1695-Orl-19UAM, 2008 WL 151885, *5 (M.D. Fla. Jan. 15, 2008); Post v. City of Fort Lauderdale, 750 F. Supp. 1131, 1132-33 (S.D. Fla. 1990).

States.  A municipality is not vicariously liable under Section 1983 for the act of an employee.  See Monell, 436 U.S. at 691, 694.[21]  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  Monell, 436 U.S. at 694.[22]

Municipal liability under Section 1983 accrues from an injury inflicted by a municipal employee or agent acting in accord with the municipality's official policy or custom.  See Monell, 436 U.S. at 694-95; see also Skop v. City of Atlanta, 485 F.3d 1130, 1145 (11th Cir. 2007).[23]  A plaintiff seeking to impose Section 1983 liability on a municipality for the actions of a police officer must identify an official policy or custom constituting the "moving force" behind the constitutional violation.  See Monell, 436 U.S. at 694; Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).[24]  "This threshold identification of a custom or policy 'ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.'"

---

[21]  See also Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998) ("There is no respondeat superior liability making a municipality liable for the wrongful actions of its police officers in making a false arrest.").

[22]  See also Skop v. City of Atlanta, 485 F.3d 1130, 1145 (11th Cir. 2007) ("[T]o be held liable for a § 1983 violation, a municipality must be found to have itself caused the constitutional violation at issue.") (emphasis in original); City of Canton v. Harris, 489 U.S. 378, 385 (1989) (municipal liability requires a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation").

[23]  "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality."  Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997).  "A custom is a practice that is so settled and permanent that it takes on the force of law," Sewell, 117 F.3d at 489, that is "shown through the repeated acts of a final policymaker for the county," Grech v. Clayton County, Ga., 335 F.3d 1326, 1329 (11th Cir. 2003).

[24]  See also Cannon v. Macon County, 1 F.3d 1558, 1565 (11th 1993) (affirming dismissal of Section 1983 claim against the county where plaintiff failed "to allege any facts whatsoever to indicate that the alleged violation was a result of a County policy or practice that would give rise to County liability").

<u>McDowell v. Brown</u>, 392 F.3d 1283, 1290 (11th Cir. 2004) (quoting <u>Bd. of County</u>

<u>Comm'rs v. Brown</u>, 520 U.S. 397, 403-404 (1997)).  Ordinarily, no single incident

establishes a municipal policy or custom.[25]

The complaint fails to allege that a policy or custom of the City of Tampa or

Tampa Police Department was the moving force behind an alleged constitutional

violation.  The complaint neither identifies an officially adopted or promulgated municipal

policy (or act of an official with final policy-making authority) that caused the alleged

Fourth Amendment violations[26] nor alleges facts supporting an inference that an official

policy or custom caused a constitutional violation.  The general allegation that Officer

Doe "was acting under color of state law and/or in compliance with the official rules,

regulations, laws, statutes, customs, usages and/or practices of the . . . City of Tampa"

is insufficient.  <u>See</u> <u>Cannon v. Macon County</u>, 1 F.3d 1558, 1565 (11th Cir. 1993); <u>Hall</u>

<u>v. Smith</u>, 170 Fed. Appx. 105, 108 (11th Cir. 2006); <u>Reyes v. City of Miami Beach</u>, No.

07-22680, 2007 WL 4199606, at *5 (S.D. Fla. Nov. 26, 2007) ("The mere fact that

Plaintiffs included the words 'official custom, course and policy' in their Complaint

cannot save their section 1983 claims.").  Although the complaint alleges generally that

Officer Doe acted "under the supervision of . . . Stephen Hogue," Tampa's chief of

police, the complaint includes no allegation that Hogue participated in or approved of

---

[25]  <u>See</u> <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 821 (1985); <u>McDowell v. Brown</u>, 392 F.3d 1283, 1290 (11th Cir. 2004); <u>Grech v. Clayton County, Ga.</u>, 335 F.3d 1326, 1330 n.6 (11th Cir. 2003).  <u>But cf</u>. <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480 (1986).

[26]  The plaintiff asserts that (Doc. 56 at 4) "the complaint . . . alleges that the traffic stop–in effect, for the 'offense' of 'driving while black'–was discriminatory, that it was Movants' custom or policy under color of law."  The complaint includes no such allegation.

Doe's alleged acts and no allegation that similar acts were so widespread and longstanding that they may be "deemed authorized by the policymaking officials because they must have known about it but failed to stop it." Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991).

The plaintiff asserts (Doc. 56 at 9) that (a) she "is entitled to maintain her claim against the Movants if she can bring forth evidence of a pattern of improper training (of, among other Movants, John Doe 1) in addition to awareness on the part of the Movant's supervising personnel (in this instance, Movant Hogue)"; and (b) "the Movants also incur liability if the evidence shows a deliberate indifference on their part to the violation of Ms. Artubel's Fourth Amendment rights." In "limited circumstances," an allegation of a failure to train or supervise can support liability under Section 1983. City of Canton v. Harris, 489 U.S. 378, 387 (1989). "[T]hese 'limited circumstances' occur only where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights." Gold, 151 F.3d at 1350 (citing City of Canton v. Harris, 489 U.S. at 389-91). To establish that a failure to train constitutes a city policy, a plaintiff may show either (a) an express policy or (b) a failure to train that amounts to "deliberate indifference" to the rights of persons with whom police officers come into contact. See City of Canton v. Harris, 489 U.S. at 389-91; see also Gold, 151 F.3d at 1350. However, the complaint includes no allegation whatever as to inadequate training (much less a pattern of improper training) and no allegation of deliberate indifference on the part of Hogue or any other supervisory official. In short, because the plaintiff alleges no facts showing that the City of Tampa had an official policy or widespread custom that

was directly responsible for her injuries, the plaintiff fails to raise her section 1983 claim against the City above the speculative level.  Cf. Reyes, 2007 WL 4199606 at *5. Accordingly, the plaintiff's Section 1983 claims against the City of Tampa and the Tampa Police Department are due to be dismissed.

State-Law Claims Against
John Doe 1, the City of Tampa, and Tampa Police Department

(a) False Arrest and False Imprisonment

Counts four and six assert claims for false arrest and false imprisonment against the City of Tampa, Tampa Police Department, Officer Doe, the City of Punta Gorda, Punta Gorda Police Department, and Detectives Lewis and Ayers.  Under Florida law, false arrest and false imprisonment are "different labels for the same cause of action."[27] False imprisonment is "the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty." Escambia County Sch. Bd. v. Bragg, 680 So. 2d 571, 572 (Fla. 1st DCA 1996) (quoting Johnson v. Weiner, 19 So. 2d 699, 700 (1944)); cf. Everett v. Fla. Inst. of Techn., 503 So. 2d 1382, 1383 (Fla. 5th DCA 1987) ("All that is required are allegations that a person has been unlawfully restrained without color of authority.").  "A plaintiff must show that the detention was unreasonable and unwarranted under the circumstances." Rivers v. Dillards Dep't Store, Inc., 698 So. 2d 1328, 1331 (Fla. 1st DCA 1997).  "[T]he essential difference between a wrongful detention for which malicious prosecution will lie, and one for which false imprisonment will lie, is that in the former the detention is

---

[27] Weissman v. K Mart Corp., 396 So. 2d 1164, 1165 n.1 (Fla. 3d DCA 1981); see also Andrews v. Florida Parole Comm'n, 768 So. 2d 1257, 1266 (Fla. 1st DCA 2000); Jackson v. Navarro, 665 So. 2d 340, 342 (Fla. 4th DCA 1995).

malicious but under the due forms of law, whereas in the latter the detention is without

color of legal authority." Johnson, 19 So. 2d at 700.  In other words,

> [T]he difference is one of the regularity of the legal process under which the plaintiff's interests have been invaded.  If he is arrested or confined without a warrant, or legal authority apart from a warrant, malicious prosecution will not lie, since the essence of that tort is the perversion of proper legal procedure, and the remedy is false imprisonment.  On the other hand, if there is legal process or due authority apart from it, the arrest is not "false" and the action must be one of malicious prosecution.

Jackson v. Navarro, 665 So. 2d 340, 342 (Fla. 4th DCA 1995) (quoting William L.

Prosser, Law of Torts, § 119 (4th ed. 1971)).  Under Florida law, probable cause is an

affirmative defense to false arrest and false imprisonment.[28]

 The Tampa defendants argue that the plaintiffs' claims for false imprisonment

and false arrest should be dismissed because (a) the facially valid Punta Gorda warrant

establishes probable cause for the plaintiff's arrest and (b) detention pursuant to a

facially valid warrant is "by definition" not a false arrest or imprisonment.

Florida recognizes the general rule that "imprisonment, if based on valid process,

cannot be false."  Navarro, 665 So. 2d at 341; see also Johnson, 19 So. 2d at 701 ("If

the imprisonment is under legal authority it may be malicious but it cannot be false.

This is true where legal authority is shown by valid process, even if irregular or voidable.

Void process will not constitute legal authority within this rule."); Erp v. Carroll, 438 So.

2d 31, 40 (Fla. 5th DCA 1983) (imprisonment under "process regular and in legal form

---

[28] City Of St. Petersburg v. Austrino, 898 So. 2d 955, 957 (Fla. 2d DCA 2005); Willingham v. City of Orlando, 929 So. 2d 43, 48 (Fla. 5th DCA 2006); DeMarie v. Jefferson Stores, Inc., 442 So. 2d 1014, 1016 n.1 (Fla. 3d DCA 1983); cf. Johnson v. Barnes & Noble Booksellers, Inc., 437 F.3d 1112, 1116 (11th Cir. 2006).

Case 8:08-cv-00179-SDM-MAP   Document 67   Filed 08/08/08   Page 24 of 42 PageID 443

issued by lawful authority" is not false).[29]  The complaint alleges that Officer Doe

arrested the plaintiff pursuant to a warrant but includes no allegation that the warrant

was void or facially deficient.  Accordingly, counts four and six fail to state a claim under

Florida law against Officer Doe, the City of Tampa, or Tampa Police Department.

(b) Intentional Infliction of Emotional Distress

Count five asserts a state-law claim for intentional infliction of emotional distress

against the City of Tampa, Tampa Police Department, and Officer Doe (among others).

To state a claim for intentional infliction of emotional distress under Florida law, the

plaintiff must prove "(1) deliberate or reckless infliction of mental suffering; (2) by

outrageous conduct; (3) which conduct must have caused the suffering; and (4) the

suffering must have been severe." Hart v. United States, 894 F.2d 1539, 1548 (11th

Cir. 1990) (citing Metro. Life Ins. Co. v. McCarson, 467 So. 2d 277, 278-79 (Fla. 1985)

(adopting definition in Restatement (Second) of Torts § 46 (1965)).[30]  "What constitutes

outrageous conduct is a question for the trial court to determine as a matter of law." De

La Campa v. Grifols America, Inc., 819 So. 2d 940, 943 (Fla. 3d DCA 2002).  The

element of outrageousness is not satisfied by proof (a) that the defendant acted with a

---

[29] Cf. Andrews v. Fla. Parole Comm'n, 768 So. 2d 1257, 1263 (Fla. 1st DCA 2000) (holding that, even if the warrants upon which the appellant was arrested were issued improperly by the Florida Parole Commission based on a mistake, the trial court properly dismissed the false imprisonment claim against the Department of Corrections "because DOC was entitled to accept the warrants as lawful, as they were regular on their face and issued by a legal body having authority to issue warrants") (citing Erp, 438 So. 2d at 40); Jibory v. City of Jacksonville, 920 So. 2d 666, 667-68 (Fla. 1st DCA 2005); Duboue v. City of New Orleans, 909 F.2d 129, 132 (5th Cir. 1990) (applying Louisiana law) ("The tort of false arrest requires the plaintiff to prove that the arrest was made without any legal process or warrant or under a warrant null and void on its face.").

[30] See also Williams v. Worldwide Flight Servs. Inc., 877 So. 2d 869, 870 (Fla. 3rd DCA 2004); Food Lion, Inc. v. Clifford, 629 So. 2d 201, 202 (Fla. 5th DCA 1993); Am. Nat. Title & Escrow of Fla., Inc. v. Guar. Title & Trust Co., 810 So. 2d 996, 999 (Fla. 4th DCA 2002); Johnson v. Thigpen, 788 So. 2d 410, 412-13 (Fla. 1st DCA 2001).

- 24 -

tortious or even criminal intent or intended to inflict emotional distress or (b) that the

defendant's conduct is "characterized by malice or a degree of aggravation which would

entitle the plaintiff to punitive damages for another tort." McCarson, 467 So. 2d at 278

(citing Restatement (Second) of Torts § 46 cmt. d (1965)).  To qualify as outrageous,

conduct must be "so outrageous in character, and so extreme in degree, as to go

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

intolerable in a civilized community." McCarson, 467 So. 2d at 279 (quoting

Restatement (Second) of Torts § 46 cmt. d (1965)).  Additionally, conduct otherwise

extreme and outrageous "may be privileged under the circumstances.  The actor is

never liable, for example, where he has done no more than to insist upon his legal rights

in a permissible way, even though he is well aware that such insistence is certain to

cause emotional distress." McCarson, 467 So. 2d at 279 (quoting Restatement

(Second) of Torts § 46 cmt. g (1965)).

 The complaint alleges that Officer Doe arrested the plaintiff pursuant to an arrest

warrant and injured the plaintiff's hands by handcuffing her too tightly.  However, the

complaint alleges no "extreme abuse of [Officer Doe's] position," see Dependable Life

Ins. Co. v. Harris, 510 So. 2d 985, 988 n.7 (Fla. 5th DCA 1987) (quoting Restatement

2d of Torts § 46 cmt. e (1965)); see also McCray v. Holt, 777 F. Supp. 945, 946-47

(S.D. Fla. 1991), or other conduct on the part of Officer Doe "so outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of decency,

and to be regarded as atrocious, and utterly intolerable in a civilized community."

McCarson, 467 So. 2d at 279.  In response to the motion to dismiss, the plaintiff points

to no allegation as to outrageous conduct by Officer Doe and indeed fails to respond in any way to the defendant's contention that the complaint includes no such allegation. Accordingly, the complaint fails to state a claim for intentional infliction of emotional distress against Officer Doe, the City of Tampa, and Tampa Police Department.

Punitive Damages Against the City of Tampa

The Tampa defendants move to strike the plaintiff's request for punitive damages to the extent applicable to the City of Tampa.  Because punitive damages against a municipality are recoverable neither under Section 1983[31] nor under Florida law,[32] the motion is due to be granted.

II.  Wal-Mart

The plaintiff's original complaint asserts claims against Wal-Mart for intentional infliction of emotional distress, wrongful termination, and violation of the "Family Leave Act" (presumably, the Family and Medical Leave Act of 1993, 107 Stat. 6, as amended, 29 U.S.C. §§ 2601-2654 (the "FMLA")).  On February 2, 2008, Wal-Mart moved to dismiss (Doc. 6) the claims and argued that (a) the complaint asserts no conduct "rising to the level of outrageousness sufficient to state a claim of intentional infliction of emotional distress," (b) Florida recognizes no common law tort of wrongful termination,[33]

---

[31]  See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) (holding that "a municipality is immune from punitive damages under 42 U.S.C. § 1983.").

[32]  See Fla. Stat. § 768.28(5) ("The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages or interest for the period before judgment."); Fla. Stat. § 768.28(2) (defining "state agencies or subdivisions" to include "municipalities").

[33]  See Bass v. Metro Dade County Dep't of Corr. and Rehab., 798 So. 2d 835, 836 (Fla. 3d DCA 2001) ("[T]here is no action in Florida for the common law tort of wrongful termination.").

and (c) the complaint fails to allege facts sufficient to support either an interference or

retaliation claim under the FMLA.  On April 7, 2008, the plaintiff filed

- an amended complaint (Doc. 23) that drops the wrongful termination and FMLA claims and indeed drops almost every reference to Wal-Mart; and

- a response in opposition (Doc. 24) that apparently argues that the complaint alleges facts sufficient to state a claim under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. § 2000e et seq. (which neither the original nor the amended complaint includes).

Equally unaccountably, the amended complaint omits Wal-Mart from both caption[34] and

"the parties" to the lawsuit.  However, in the body of the complaint, Wal-Mart is included

in the heading of count five ("Intentional Infliction of Emotional Distress as to All

Defendants Including Wall-Mart [sic]"), which alleges generally that "[t]he totality of

Defendants' aforementioned conduct, including . . . the [plaintiff's] suspension without

pay from her employment and subsequent termination from said employment as a direct

result of the false arrest, imprisonment and continued prosecution of plaintiff by

Defendant Colonial Bank Group for almost a year was outrageous."  Whether the

amended complaint inadvertently omits Wal-Mart from the caption (in violation of Rule

10(a)) and from the list of parties or inadvertently includes Wal-Mart in count five is

unclear.  Although "the defendant should not be in a position of having to guess which

of a plaintiff's inadvertent inclusions or exclusions have legal effect," Jones v. Parmley,

No. 5:98-CV-374, 2005 WL 928666, *1 n.6 (N.D.N.Y. Apr. 20, 2005), this order

---

[34] See Rule 10(a), Federal Rules of Civil Procedure ("The title of the complaint must name all the parties."); see also Jones v. Parmley, No. 5:98-CV-374, 2005 WL 928666, *1 (N.D.N.Y. Apr. 20, 2005) ("[A] party that is not named in the caption of an amended complaint is not a party to the action.").

assumes that the amended complaint asserts a claim against Wal-Mart for intentional infliction of emotional distress.

"'Florida law imposes a very high standard on a plaintiff alleging intentional infliction of emotional distress in the employment realm' . . . and strongly disfavors this type of claim in the employment context." Martz v. Munroe Reg'l Med. Ctr., Inc., No. 5:06-cv-422-Oc-10, 2007 WL 2044247, 3 (M.D. Fla. July 10, 2007) (quoting Scelta v. Delicatessen Support Servs., Inc., 57 F. Supp. 2d 1327, 1357-58 (M.D. Fla. 1999)). "Liability has been found only where the conduct has been so outrageous in character . . . as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." McCarson, 467 So. 2d at 278-79. "Claims of intentional infliction of emotional distress related to employment discrimination cases have been consistently rejected as failing to meet the threshold burden." Martz, 2007 WL 2044247, *3 (citing Howry v. Nisus, Inc., 910 F. Supp. 576, 580 (M.D. Fla. 1995)).[35]  Conduct such as "mere insults, indignities, threats, or false accusations" will not result in liability.  Williams v. Worldwide Flight Servs. Inc., 877 So. 2d 869, 870 (Fla. 3rd DCA 2004).  However, "[f]ederal courts interpreting Florida law have allowed claims for intentional infliction of emotional distress in the workplace to go

---

[35]  See also Golden v. Complete Holdings, Inc., 818 F. Supp. 1495, 1499 (M.D. Fla. 1993) ("Florida courts have consistently rejected claims for intentional infliction of emotional distress relating to sexual harassment, intentional age discrimination and verbal abuse in the employment context."); Hayes v. Liberty Nat'l Life Ins. Co., No. 94-cv-425, 1995 WL 500896, *4 (M.D. Fla. Aug. 4, 1995) ("Courts applying Florida law have consistently dismissed claims of intentional infliction of emotional distress based upon an employer's retaliatory discharge, discipline, or harassment of an employee.").

forward, where the claims involve persistent verbal abuse coupled with repeated offensive physical contact." De La Campa, 819 So. 2d at 944.[36]

The complaint alleges no physical contact. The complaint alleges only (Doc. 53 ¶ 50) that the plaintiff's "suspension without pay from her employment and subsequent termination from said employment as a direct result of the false arrest" (which Wal-Mart is not alleged to have caused[37]) was outrageous. In short, the complaint alleges no conduct on the part of Wal-Mart sufficiently outrageous, atrocious, and intolerable to support a claim for intentional infliction of emotional distress.

The plaintiff's opposition includes the following assertions. First, when Wal-Mart suspended the plaintiff without pay pending resolution of the criminal charges, the plaintiff informed her supervisors (Doc. 28 at 3; Doc. 29 at 3) that (a) the charges against her were false and her personnel records would establish her alibi and (b) the charges had no relationship to her job duties. However, the plaintiff's supervisors ignored her protests and "declined to entertain" her request for an administrative appeal of the suspension. Second (Doc. 28 at 3; Doc. 29 at 6), the plaintiff was pregnant at the time of her arrest, and (Doc. 28 at 3) she miscarried as a result of stress caused in part by her suspension and termination. Third, after the dismissal of the charges, the plaintiff's supervisors (Doc. 28 at 3-4; Doc. 29 at 4) told the plaintiff that "the Constitution of Wal-Mart said that she was guilty as charged unless a jury of [her] peers exonerated

---

[36] See also Lopez v. Ingram Micro, Inc., No. 04-cv-95, 1997 WL 401585, *9 (S.D. Fla Mar. 18, 1997) (noting that each case the court found in which a plaintiff successfully stated an intentional infliction of emotional distress claim against a former employer "involved allegations of 'relentless physical, as well as verbal, harassment . . . .'").

[37] Cf. Doc. 27 at 6 ("Wall-Mart [sic] did not cause plaintiff's wrongful arrest.").

[her]," and the plaintiff "reasonably believes, from the tone of her supervisors' voice during her discussions with Wal-Mart, that they suspended her and subsequently terminated her because they believed that any African-American accused of kiting a check must surely be guilty of the crime merely because she is African-American." Because omitted from the complaint, these allegations receive no consideration on a motion to dismiss.[38]  However, although the conduct described, "if true, is distasteful and perhaps violates applicable discrimination laws," Martz, 2007 WL 2044247 at *3, the conduct is not sufficiently outrageous, atrocious, and intolerable to support a claim for intentional infliction of emotional distress.[39]  Accordingly, amendment would be futile and the plaintiff's claim for intentional infliction of emotional distress against Wal-Mart is due to be dismissed with prejudice.

III.  The Bank Defendants

(a) Conspiracy

Count three asserts a conspiracy claim under 42 U.S.C. § 1985(3) against the City of Punta Gorda, Punta Gorda Police Department, Detectives Lewis and Ayers, and the bank defendants.  "Section 1985(3) . . . creates no rights.  It is a purely remedial

---

[38]  See Car Carriers v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984) ("'[I]it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'")

[39]  See, e.g.,  Martz v. Munroe Reg'l Med. Ctr., Inc., No. 5:06-cv-422-Oc-10, 2007 WL 2044247, *3 (M.D. Fla. July 10, 2007) (allegations that the plaintiff was involuntarily placed on medical leave and afterwards terminated owing to her pregnancy and related work-restrictions failed to state a claim for intentional infliction of emotional distress); Williams v. Worldwide Flight Servs., Inc., 877 So. 2d at 870 (allegations that supervisors used racial slurs, fabricated records of false disciplinary incidents, falsely accused the plaintiff of stealing, and persistently threatened him with termination for no apparent reason failed to state a claim for intentional infliction of emotional distress); De La Campa v. Grifols America, Inc., 819 So. 2d 940, 944 (Fla. 3d DCA 2002) (allegation of pervasive pattern of sexual harassment because of the plaintiff's sexual orientation, including derogatory remarks, abusive acts, and threats of termination failed to state a claim for intentional infliction of emotional distress).

statute, providing a civil cause of action when some otherwise defined federal right–to equal protection of the laws or equal privileges and immunities under the laws–is breached by a conspiracy in the manner defined by the section."  Great American Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 376 (1979).  "The elements of a cause of action under § 1985(3) are: (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  Trawinski v. United Techs., 313 F.3d 1295, 1299 (11th Cir. 2002).  Section 1985(3)'s second element, that is, "the language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).[40]

The complaint fails to allege facts sufficient to support an inference of race-based animus.  The plaintiff identifies herself as African-American and alleges generally (not in count three, but in count seven, which asserts a claim for malicious prosecution) (Doc. 53 ¶ 52) that "the criminal arrest and prosecution of Plaintiff at the instance of the Colonial Bank Group were motivated by bias, and racial animosity."  However, this vague assertion of racial motivation (even if intended to extend to the Punta Gorda

---

[40]  This class-based animus must be present even if the alleged conspiracy involves public officials.  See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996); Gagliardi v. Village of Pawling, 18 F.3d 188, 194 (2d Cir. 1994); see also Burrell v. Bd. of Trs. of Ga. Military Coll., 970 F.2d 785, 794 (11th Cir. 1992); Munson v. Friske, 754 F.2d 683, 694-95 & n.8 (7th Cir. 1985).

defendants as well as the bank defendants) is not sufficient to state a Section 1985(3)

conspiracy claim.  See, e.g., Posr v. Court Officer Shield No. 207, 180 F.3d 409, 419

(2d Cir. 1999).

The plaintiff contends (Doc. 52 at 9) that "a reasonable supposition" that the bank

defendants and the Punta Gorda defendants "filed and maintained their criminal

complaint" against the plaintiff because of her race is created by allegations that (a) the

bank defendants possessed a photograph of the perpetrator, "who did not resemble Ms.

Artubel in any way other than being of African-American ancestry" (Doc. 52 at 2) and

(b) after the bank defendants saw Ms. Artubel in person, the bank defendants (Doc. 52

at 9) "refused to correct, retract or withdraw their criminal complaint . . . or investigate

her actual whereabouts at the time of the incident."  In fact, the complaint includes no

reference whatever to a photograph or to any lack of resemblance between the plaintiff

and the alleged perpetrator.[41]  The complaint alleges that (Doc. 53 ¶ 62) the bank

defendants commenced "the criminal process and prosecution of the Plaintiff in an effort

to cover themselves against a lawsuit for violation of the Plaintiff's civil and

constitutional rights."  However, although permitting the inference that the bank

defendants misidentified the plaintiff as the perpetrator and afterwards refused to admit

the mistake owing to fear of a lawsuit, the allegation shows no race-based animus.

---

[41] But see Doc. 1 (the original, now superseded complaint) (alleging that after confronting the bank defendants, "the plaintiff was shown pictures of a woman who looks nothing like plaintiff.  When plaintiff protested, Rose Ramsey, the manager accused plaintiff of having loss [sic] weight even thought [sic] he [sic] woman in the picture is taller and older.").

Count three also fails to state a conspiracy claim under Section 1983, which includes no class-based animus requirement.[42]  A private person who conspires with a state actor to violate a constitutional right is liable under Section 1983.  See Dennis v. Sparks, 449 U.S. 24, 28-29 (1980); NAACP v. Hunt, 891 F.2d 1555, 1563 (11th Cir. 1990) ("Private parties who corruptly conspire with state officials to maliciously prosecute an individual also act under color of state law and can be sued by that individual under section 1983."); Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1285 (11th Cir. 2002) ("[S]ection 1983 does not afford a remedy against a private person unless that person is shown to have conspired with one or more state actors.") (citing NAACP v. Hunt, 891 F.2d at 1563).  To establish a prima facie case of Section 1983 conspiracy, a plaintiff must show that "the defendants reached an understanding to deny the plaintiff's rights."  Hadley v. Gutierrez, 526 F.3d 1324, 1332 (11th Cir. 2008).[43]  Additionally, the plaintiff must show "an underlying actual denial of [his] constitutional rights."  Hadley, 526 F.3d at 1332 (quoting GJR Invs., 132 F.3d at 1370).[44]  Finally, "[a] plaintiff claiming a conspiracy under § 1983 must make particularized allegations that a conspiracy exists."  Hansel v. All Gone Towing Co., 132 Fed. Appx. 308, 309 (11th Cir. 2005) (unpublished) (citing GJR Invs, 132 F.3d at 1370).  Vague and conclusory

---

[42]  See Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) ("A complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on any possible theory.") (citing Robertson v. Johnston, 376 F.2d 43 (5th Cir.1967)).  The plaintiff's opposition brief omits all reference to Section 1985(3) and instead appears to argue that the complaint states a claim under Section 1983.

[43]  See also Rowe v. City of Fort Lauderdale, 279 F.3d at 1283-84; Bendiburg v. Dempsey, 909 F.2d 463, 469 (11th Cir. 1990).

[44]  See also Bendiburg, 909 F.2d at 468 ("The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy.").

allegations suggesting a Section 1983 conspiracy are insufficient.  <u>Fullman v. Graddick</u>, 739 F.2d 553, 556-57 (11th Cir. 1984).

The complaint fails to sufficiently allege an agreement or understanding between the banks defendants and the Punta Gorda defendants to deny the plaintiff's federal rights.  The complaint alleges that (a) the bank defendants filed a police report accusing the plaintiff of a serious crime of which she was innocent, filed or caused the filing of a "bogus criminal complaint" against the plaintiff for the same crime, and demanded the plaintiff's prosecution despite knowing that probable cause was absent and (b) for reasons unstated in the complaint, but perhaps as a result of a "'<u>continuing vendetta</u>'–against Ms. Artubel" (Doc. 52 at 13) (emphasis in original), Detective Ayers filed a perjurious affidavit in support of an arrest warrant and criminal complaint.  Although the allegations, if true, show that the combined actions of the bank defendants and Detective Ayers resulted in the prosecution of the plaintiff despite a manifest absence of probable cause, the complaint fails to allege facts showing that the bank defendants and the Punta Gorda defendants reached an agreement or understanding to deny a federal right.  The conclusory assertion (Doc. 53 ¶ 43) that the bank defendants and Punta Gorda defendants "conspired with one another to arrest Plaintiff for the purpose of depriving said Plaintiff of the equal protection of the laws" is insufficient.

(b) Intentional Infliction of Emotional Distress

Count five asserts a claim for intentional infliction of emotional distress against the bank defendants (among others).  However, the bank defendants' alleged conduct–accusing the plaintiff of a crime of which she was innocent, filing or causing the filing of a criminal complaint against the plaintiff for the same crime, and refusing either

to withdraw the complaint despite the plaintiff's claims of innocence or to independently

investigate the claims–does not rise to the level of outrageousness sufficient to state a

claim of intentional infliction of emotional distress.  As noted above, the element of

outrageousness is not satisfied by proof (a) that the defendant acted with a tortious or

even criminal intent or intended to inflict emotional distress or (b) that the defendant's

conduct is "characterized by malice or a degree of aggravation which would entitle the

plaintiff to punitive damages for another tort."  McCarson, 467 So. 2d at 278 (citing

Restatement (Second) of Torts § 46 cmt. d (1965)).  Even if a deliberate scheme to

wrongfully convict an innocent person of a third degree felony constitutes conduct

sufficiently outrageous to state a claim for intentional infliction of emotional distress,[45]

the complaint includes no such allegation.  Cf. Doc. 52 at 11 ("[A] reasonable jury[46]

might find that . . . filing an erroneous criminal complaint was not outrageous . . . .")

(emphasis added).  Allegations that the bank defendants filed a "false" accusation, i.e.,

one with no foundation in fact, and disregarded the plaintiff's claims of innocence and

her offer to produce her employment records to prove her alibi are insufficiently

outrageous.  Cf. Valdes v. GAB Robins North America, Inc., 924 So. 2d 862, 866 (Fla.

3d DCA 2006).

---

[45]  But see Edison v. Florida, No. 2:04-cv-157-FtM-99SPC, 2007 WL 80831, *8 (M.D. Fla. Jan. 8, 2007).

[46]  See De La Campa v. Grifols America, Inc., 819 So. 2d 940, 943 (Fla. 3d DCA 2002) ("What constitutes outrageous conduct is a question for the trial court to determine as a matter of law.").

(c) Malicious Prosecution

Count seven asserts a claim for malicious prosecution against the City of Punta Gorda, Punta Gorda Police Department, Detectives Lewis and Ayers, and the bank defendants.  The complaint fails to identify the substantive law under which the claim arises.  Although count seven omits reference to Section 1983 or to any specific constitutional or statutory provision allegedly violated, the plaintiff's opposition assumes that count seven asserts a Section 1983 claim for violation of rights secured by the Fourth Amendment.  In any event, count seven fails to state a claim for malicious prosecution.

To state a claim for malicious prosecution under Florida law, a plaintiff must allege

> (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a <u>bona fide</u> termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice[47] on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.

<u>Alamo Rent-A-Car, Inc. v. Mancusi</u>, 632 So. 2d 1352, 1355 (Fla. 1994); <u>see also</u> <u>Kingsland</u>, 382 F.3d at 1234.  The requirement of a <u>bona fide</u> termination of the underlying civil suit in the plaintiff's favor "is satisfied by either a favorable decision on the merits or a <u>bona fide</u> termination of that lawsuit."  <u>Rowen v. Holiday Pines Prop.</u>

---

[47]  <u>But cf. Alamo Rent-A-Car, Inc. v. Mancusi</u>, 632 So. 2d 1352, 1357 (Fla. 1994) ( "In an action for malicious prosecution it is not necessary for a plaintiff to prove actual malice; legal malice is sufficient and may be inferred from, among other things, a lack of probable cause, gross negligence, or great indifference to persons, property, or the rights of others.").

Owners' Ass'n, Inc., 759 So. 2d 13, 16 (Fla. 4th DCA 2000). "Where a malicious

prosecution action is based on an earlier criminal case, the alternative requirement of a

'bona fide termination of the proceedings' is met by a good faith <u>nolle</u> <u>prosequi</u> or

declination to prosecute," that is, a <u>nolle</u> <u>prosequi</u> or declination "not bargained for or

obtained by the accused upon a promise of payment or restitution." <u>Union Oil of Cal.</u>

<u>Amsco Div. v. Watson</u>, 468 So. 2d 349, 353 n.3 (Fla. 3d DCA 1985) (citation and

internal quotation marks omitted); <u>see also</u> <u>Freedman v. Crabro Motors, Inc.</u>, 199 So. 2d

745, 746 (Fla. 3d DCA 1967).[48]

The plaintiff alleges that the charges against her (Doc. 53 ¶ 34) "were terminated

in her favor" but fails to allege a "<u>bona</u> <u>fide</u>" termination. <u>See</u> <u>Mancusi</u>, 632 So. 2d at

1356 ("[I]t is the plaintiff's burden to establish that the underlying cause of action was

terminated and that such termination was 'bona fide.'"); <u>Valdes</u>, 924 So. 2d 866

("Alleging only that a prior action ended favorably is not enough."). The plaintiff must

allege "that the first suit, on which the malicious prosecution suit is based, ended in a

manner indicating the original defendant's (and current plaintiff's) innocence of the

charges or allegations contained in the first suit," <u>Doss v. Bank Of America, N.A.</u>, 857

So. 2d 991, 994 (Fla. 5th DCA 2003), in other words, "that the termination of the first

suit was not only favorable to the defendant in that suit, but also that it demonstrated the

first suit's lack of merit," <u>Doss</u>, 857 So. 2d at 994.[49] Because the complaint includes no

---

[48] <u>But cf.</u> <u>Mancusi</u>, 632 So. 2d at 1356 (noting that "bargaining or negotiating, in and of itself, does not always negate the bona fide nature of the termination. For instance . . . if the bargaining constitutes nothing more than a promise to pay what was offered before the charges were brought, and the negotiations reflect the accused's innocence, then the termination would still be bona fide.").

[49] <u>See also</u> Restatement (Second) of Torts § 660 cmt. a (1977) ("Proceedings are 'terminated in favor of the accused,' as that phrase is used in § 653 [stating the elements of malicious prosecution] . . . only when their final disposition is such as to indicate the innocence of the accused.").

(continued...)

allegation of a <u>bona</u> <u>fide</u> termination of the criminal proceedings, count seven is due to be dismissed.[50]

For the same reason, the complaint fails to state a claim under Section 1983.  "To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures."  <u>Kingsland</u>, 382 F.3d at 1234 (citing <u>Wood</u>, 323 F.3d at 881).  Because the complaint fails to allege a <u>bona</u> <u>fide</u> termination of the criminal proceedings in the plaintiff's favor (an element of common law malicious prosecution), the complaint fails to state a malicious prosecution claim under Section 1983.

---

[49](...continued)

[50]  To demonstrate that the plaintiff cannot allege a <u>bona</u> <u>fide</u> termination of the criminal proceedings, the bank defendants attach to their motion (Doc. 47-2) a minute order from the criminal case (which as a public record is subject to judicial notice, <u>see</u> <u>Makro Capital of America, Inc. v. UBS AG</u>, 372 F. Supp. 2d 623, 627 (S.D. Fla. 2005) (citing <u>Bryant v. Avado Brands, Inc.</u>, 187 F.3d 1271, 1279-80 (11th Cir. 1999)); <u>Universal Express, Inc. v. SEC</u>, 177 Fed. Appx., 1-2 (11th Cir. 2006)), dismissing without prejudice charges against the plaintiff under Section 831.09, Florida Statutes, with the comment, "Law Enforcement Not Comply with Discovery."  "Where dismissal is on technical grounds, for procedural reasons, or any other reason not inconsistent with the guilt of the accused, it does not constitute a favorable termination."  <u>Union Oil of Cal. Amsco Div. v. Watson</u>, 468 So. 2d 349, 353 (Fla. 3d DCA 1985).  However, construed most favorably to the plaintiff, the minute order alone does not preclude factual allegations showing a <u>bona</u> <u>fide</u> termination in the plaintiff's favor, and the plaintiff will therefore have an opportunity to re-plead count seven.  <u>See, e.g.</u>, <u>Union Oil</u>, 468 So. 2d at 354 ("In order to determine whether the termination of an action prior to a determination on the merits tends to indicate innocence on the part of the defendant one must look to whether the manner of termination reflects on the merits of the case.").

(d) Abuse of Process

Count eight apparently[51] asserts a claim for malicious prosecution against the City

of Punta Gorda, Punta Gorda Police Department, Detectives Lewis and Ayers, and the

bank defendants.  "A cause of action for abuse of process requires proof that: (1) the

defendant made an illegal, improper, or perverted use of process; (2) the defendant had

an ulterior motive or purpose in exercising the illegal, improper or perverted process;

and (3) the plaintiff was injured as a result of defendant's action."  Hardick v. Homol, 795

So. 2d 1107, 1111 n.2 (Fla. 5th DCA 2001).[52]  "An action for abuse of process differs

from an action for malicious prosecution in that the latter is concerned with maliciously

causing process to issue, while the former is concerned with the improper use of

process after it has been issued."  McMurray v. U-Haul Co., Inc., 425 So. 2d 1208, 1209

(Fla. 4th DCA 1983) (emphasis added); see also Marty v. Gresh, 501 So. 2d 87, 89

(Fla. 1st DCA 1987) (same); Cazares v. Church of Scientology of Cal., Inc., 444 So. 2d

442, 444 (Fla. 5th DCA 1983) ("[A]buse of process requires an act constituting the

misuse of process after it issues.  The maliciousness or lack of foundation of the

asserted cause of action itself is actually irrelevant to the tort of abuse of process.")

(emphasis added).  Moreover, "[t]here is no abuse of process . . . when the process is

used to accomplish the result for which it was created, regardless of an incidental or

---

[51]  The heading includes the bank defendants but the remainder of count eight (Doc. 53 ¶ 64-66) refers only to (a) Detective Ayers (Doc. 53 ¶ 64) and (b) an unspecified "Defendant" (Doc. 53 ¶ 64).

[52]  "The usual abuse of process claim involves some form of extortion-using a criminal prosecution to force payment of a civil debt."  Bembry v. City of Tallahassee, No. 4:05-cv-286-SPM, 2006 WL 1080676, 4 (N.D. Fla. Apr. 24, 2006) (citing Bothmann v. Harrington, 458 So. 2d 1163, 1169 (Fla. 3d DCA1984); Restatement (Second) of Torts § 682 cmt. b (1977) ("The usual case of abuse of process is one of some form of extortion . . . .").

concurrent motive of spite or ulterior purpose." <u>Bothmann v. Harrington</u>, 458 So. 2d 1163, 1169 (Fla. 3d DCA 1984).[53]

Count eight alleges no post-issuance misuse of process by the bank defendants to accomplish a purpose for which the process was not intended.  Count eight itself alleges no act of any kind by the bank defendants.  However, even if the complaint's allegation elsewhere that Colonial "demanded that plaintiff be prosecuted to the fullest extent of the law" even though the plaintiff informed Colonial (Doc. 53 ¶¶ 30, 31) of her alibi and offered to produce her employment records to prove the alibi is construed to include an allegation that the bank defendants (Doc. 52 at 9) "refused to correct, retract or withdraw their criminal complaint . . . or investigate [the plaintiff's] actual whereabouts at the time of the incident" after being informed of the plaintiff's alibi, the omission implies no misuse of process to accomplish a purpose for which the process was not intended.  Finally, the allegation that the bank defendants "filed or caused to be filed a bogus criminal complaint against the plaintiff" alleges no post-process act and is essentially a "thinly disguised malicious prosecution claim," <u>see</u> <u>Blue v. Weinstein</u>, 381 So. 2d 308, 311 (Fla. 3d DCA 1980).[54]

---

[53]  <u>See also</u> <u>Bothmann v. Harrington</u>, 458 So. 2d 1169 n.8 (Fla. 3d DCA 1984) ("Even a pure spite motive is not sufficient where process is used only to accomplish its intended purpose.  Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.") (quoting W. Prosser, Handbook of the Law of Torts § 121 (4th ed. 1971)).

[54]  <u>See also</u> <u>McMurray v. U-Haul Co., Inc.</u>, 425 So. 2d 1208, 1209 (Fla. 4th DCA 1983); <u>Marty v. Gresh</u>, 501 So. 2d 87, 89 (Fla. 1st DCA 1987); Restatement (Second) of Torts § 682 cmt. a (1977) ("The gravamen of the misconduct for which the liability stated in this Section is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish.").

**CONCLUSION**

In summary, Wal-Mart's motion to dismiss (Docs. 38) is **GRANTED**, and the

plaintiff's claim for intentional infliction of emotional distress against Wal-Mart is

**DISMISSED WITH PREJUDICE**.

The Tampa defendants' motion to dismiss (Doc. 54) is **GRANTED IN PART AND**

**DENIED IN PART** as follows.  To the extent the complaint asserts claims under the

First, Fifth, and Eighth Amendments, the claims are **DISMISSED WITHOUT**

**PREJUDICE**.  The plaintiff's Section 1983 claims against Stephen Hogue in his official

capacity are **DISMISSED WITH PREJUDICE**.  Otherwise, counts one, two, four, five,

and six are **DISMISSED WITHOUT PREJUDICE** as to the City of Tampa, Tampa Police

Department, and Officer Doe.  The plaintiff's request for punitive damages to the extent

applicable to the City of Tampa is **STRICKEN**.

Colonial and Patterson's motion to dismiss (Doc. 47) is **GRANTED IN PART AND**

**DENIED IN PART** as follows.  Counts three, five, seven, and eight are **DISMISSED**

**WITHOUT PREJUDICE** as to Colonial and Patterson.

On or before **September 1, 2008**, the plaintiff may file a second complaint

correcting the deficiencies discussed in this order, failing which the claims will be

dismissed with prejudice.  All counsel shall strictly comply with CM/ECF filing

requirements.[55]

---

[55]  After filing a non-compliant amended complaint on April 7, 2008, the plaintiff's counsel was
notified of the error and instructed to re-file by the Clerk, which counsel omitted to do until May 13, 2008.
Other parties have also submitted non-compliant filings.  See Docs. 24, 27, 30, 32, 36, 37, 46, 48.  All
counsel are directed to review the Middle District's Administrative Procedures for Electronic Filing in Civil
and Criminal Cases (M.D. Fla. Mar. 15, 2007), available at http://www.flmd.uscourts.gov.  Strict
compliance is expected.

Finally, more than one hundred and twenty days have passed since the complaint was filed, Ramsey has not voluntarily appeared, the plaintiff has not filed proof of service on Ramsey, and evidently (see Doc. 47 at 1 n.1) Ramsey has not been served. Accordingly, on or before **September 1, 2008**, the plaintiff shall serve the summons and complaint on Ramsey in accordance with the requirements of Rule 4 and file proof of service with the Clerk, failing which the plaintiff's claims against Ramsey will be dismissed without further notice.  See Fed. R. Civ. P. 4(m).

ORDERED in Tampa, Florida, on August 8, 2008.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE